**Application of Frederick H. BEACH and Vincent DiRubbio.**

**Patent Appeal No. 7368.**

United States Court of Customs and Patent Appeals.

May 20, 1965.

Smith, J., and Worley, C. J., dissented.

———◇———

Connolly & Hutz, Wilmington, Del. (Nathan Bakalar, Wilmington, Del., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

210

MARTIN, Judge.

The issue raised by this appeal is whether the Board of Appeals erred in sustaining the examiner's action rejecting claim 26 of appellants' patent application serial No. 496,662, filed March 25, 1965, titled "Loading." Some claims have been allowed.

Claim 26 reads:

"26. A stepping mechanism for sequentially advancing a series of article holders to accurate locations at a plurality of successive work stations, said mechanism including an endless track having a succession of legs angularly connected to each other, a series of cylindrical article-holding blocks slidably mounted in each leg, the cylindrical surfaces of the blocks in each leg being in contact with the cylindrical surfaces of the other blocks in the same leg, some of the legs having a one-block vacancy, and advancing mechanism connected to advance the rearmost block of each series and cause these rearmost blocks to push the remaining blocks of the series along the individual legs to the next legs."

The claim is drawn to a subcombination of an apparatus disclosed for automatically filling receptacles of small detonators with explosive powder. The apparatus uses a series of holding discs to carry the receptacles and includes means for moving those discs stepwise through several stations for dispensing and compacting the powder.

The apparatus is best shown by the diagrammatic plan view constituting Fig. 3 of the application, reproduced below:

FIG. 3

In the drawing, the reference characters 101 to 128 designate the holding discs, each of which has a socket located at its center for holding a detonator receptacle. The discs are movable along a trackway made up of four angularly arranged legs 201, 202, 203 and 204. The discs are provided with oppositely dis-

posed slots at their sides for reception of inner and outer positioning rails 96 and 98 of the trackway. Although the discs are arranged generally around the trackway in sequence with each contacting the one in front of it, spaces are left as shown at 179 and 180. As a result, the discs can be moved stepwise by operating advancing rods of cylinders 141, 142, 143 and 144 in predetermined sequence with each cylinder moving all the discs in a leg by pushing the first one in line.

As the discs are brought to various stations along the trackway, operations are performed on the receptacles held therein. Thus means is provided at 181 for dispensing a portion of the explosive material into the receptacle and at 182 for compacting the material. Other loading or compacting units are disposed at 183, 184, 185 and 186.

The rejection of claim 26 is based on the prior art, the following references being involved:

| | | |
|---|---|---|
| Cope et al. | 1,738,039 | December 3, 1929 |
| Schwartz et al. | 1,054,459 | February 25, 1913 |

Cope et al. discloses a stepping conveyor which moves holders along four legs in an arrangement generally similar to appellants' conveyor. The holders are for material to be roasted in a furnace and are in the form of square pans having upturned flanges along three sides while the fourth side is provided with an upwardly inclined end portion terminating in a downwardly depending flange. Four pusher cylinders are used and there is a vacancy of one pan in the series around the four legs. The square outline of the pans insures obtaining maximum capacity for a given height and width and also that the pan will remain in a particular orientation required to permit unloading through the inclined end portion at one position in the path of travel.

Schwartz et al. shows a conveying means "for use in connection with hosiery drying apparatus." It includes a table with a slot serving as a rectangular guideway and means for pushing individual carriers therealong. At certain points along the guideway, carriers accumulate in contacting relationship so that one carrier is pushed directly and itself pushes another carrier. The carriers are "square so that while the carriers are free to slide in the guideway, they are held from turning therein." Although there is a circular top portion on each carrier, that portion is smaller than the square portion with the result that only the square portions of adjacent carriers contact.

In his answer, the examiner held claim 26 unpatentable over Cope et al. in view of Schwartz et al. He noted that Schwartz et al. disclose article-holding blocks that are square at the bottom and cylindrical at the top and was of the opinion that it is "merely a matter of design, mechanical skill, or expedience, and not invention, to make the blocks of whatever shape desired, such as cylindrical."

In sustaining the examiner as to claim 26, the board stated:

"Appellants state that claim 26 is focussed [sic] at the cylindrical blocks and their interengagement with each other. This they state is of considerable significance in the ammunition loading art involving a hazardous operation, in providing only a very small contact area between the adjacent cylindrical surfaces of the carrier blocks and thus avoiding accumulation of detonatable material between the blocks. They point out, in substance, that in both Cope et al. and Schwartz, square portions of the carriers contact each other, tending to lodge particles therebetween and increase the danger of detonation.

"Appellants' arguments are not found to be commensurate with the structure actually recited in claim 26. The term 'cylindrical' is not restricted to a circular surface but is equally readable on square receptacles such as those of Cope et al. Definition —c— of 'cylinder' in Web-

ster's New International Dictionary, 2nd Edition, Unabridged reads:

" 'The surface traced by any straight line, called generatrix or element, moving parallel to a fixed straight line.'

Moreover, the feeding mechanism of claim 26 is not restricted to ammunition feeding and, therefore, the asserted advantage of eliminating or minimizing lodging of detonatable materials between adjacent blocks is non-sequitur. The same is deemed true as to the matter of increased speed to twice that of Cope et al. Claim 26 recites 'some of the legs having one-block vacancy.' If consecutive legs or three of the four legs have such vacancies, sequential operation of the four advancing means will be necessary, as in Cope et al., and there would be no increase in speed. Claim 26 is accordingly unpatentable over Cope et al., *per se,* and its rejection is sustained. * * "

Appellants contend that the board erred in ruling that "cylindrical" in claim 26 is applicable to square receptacles.

We agree with that contention. Even assuming that the definition which the board selected admits of the board's interpretation, the meaning thereby assigned to "cylindrical" obviously is not the meaning ordinarily accepted for it [1]

nor is it the meaning on which the prosecution was based prior to the board's decision.[2] The specification of the application satisfies us that the usual meaning requiring a curved surface is the one applicable here. Although the specification does disclose that rectangular or square discs may be used instead of the circular one shown in Fig. 3, it specifically states that "circular discs provide a more open work space through which stray particles can more readily fall, and also provide minimum contact between holders (at the point where the discs engage) so that there is less likelihood of wedging explosive particles and detonating them." That passage thus attributes the very advantage appellants relied on for patentability before the board to circular discs or holders as distinguished from holders of square or rectangular shape. It is clear to us that claim 26 is limited to a mechanism having cylindrical blocks with curved sides and thus defines novelty over Cope et al.

■ The board's reference to claim 26 not being restricted to ammunition feeding means does not seem to deny significance to appellants' asserted advantage that the small contact area between cylindrical blocks avoids accumulation of material between blocks and thus reduces danger of explosion when detonators are being filled.[3] Rather, the board appears

---

1. Appellants point out that the corresponding definition in the Third Edition of Webster's New International Dictionary, Unabridged, has been amended to read:
    " * * * the surface traced by any straight line moving parallel to a fixed straight line and intersecting a fixed curve."
    The last five words of that definition clearly precludes the interpretation which the board gave to the definition from the Second Edition.

2. As the solicitor correctly noted:
    "This broad interpretation of 'cylinder' [the board's interpretation] was new to the case. There can be no doubt that the examiner shared appellants' more restrictive understanding of the word."

3. This interpretation of the board's decision appears to be supported by the fact that the following claim stands allowed:
    "A loading mechanism for explosive particles, said mechanism having a plurality of blocks slidably mounted in a trackway, each block having container-holding structure for carrying a container to be loaded, a loading station adjacent the trackway, said station having a supply of explosive powder and dispensing structure for introducing the powder into containers at a point in the trackway, and advancing mechanism connected to push against the blocks at a point in the trackway and thereby impel them along the trackway and cause the impelled blocks to contact and push before them a group of blocks that are ahead of them in the track-

to have taken the position that such avoidance of the accumulation of material is not significant to the determination of patentability where the claim is not limited to filling with explosive material. The basic issue remaining, however, is whether it would be obvious to substitute holders having cylindrical or curved contacting surfaces for the square holders of Cope et al. The board, in its ruling that the claim is "unpatentable over Cope et al., *per se*," does not advance any reason why that substitution would be obvious. In such circumstances, we are not free to search for reasons that might support the rejection. Neither are we prepared to accept the conclusion of the board that the claim is unpatentable over Cope et al. alone.

■ Since the board did not reverse the examiner's rejection of the claim on Cope et al. in view of Schwartz et al. as set out in the Examiner's Answer, that rejection is also to be considered here. The basis for the rejection seems to be that the latter reference, because it shows "cylindrical surfaces on the upper part of the blocks," suggests the use of cylindrical article-holding blocks in Cope et al. However, only the lower portions of the blocks or carriers of Schwartz et al., which are deliberately made square to prevent turning, contact or in any way effect the conveying action. The cylindrical portions on top of the carriers are apparently so shaped to receive forms carrying hosiery to be dried and, in our opinion, do not result in any suggestion that such shape be utilized in connection with the conveying function. For that reason, we think the board's decision is in error.

The decision of the Board of Appeals is reversed.

Reversed.

SMITH, Judge, with whom WORLEY, Chief Judge, joins (dissenting).

While I do not agree with the forced interpretation which the board placed on

way, all said blocks being generally cylindrical so that they contact each

the word "cylindrical" in claim 26 as a basis for justifying its refusal of the claim, it seems to me that the action of the board in affirming the examiner's rejection is proper and I would affirm it.

A feature stressed by the majority is the disc arrangement which provides more open work space through which stray explosive particles may be discharged rather than being compacted between holders, as might be the case with holders of another configuration.

In discussing the rejection of claim 26 as unpatentable over Cope et al. in view of Schwartz et al., the examiner's answer of January 17, 1963 states:

" * * * Each of the legs of the Cope et al device has a one-block vacancy at various times. The blocks contact each other and push each other. The patent to Schwartz et al teaches the use of an advancing mechanism with four legs and with cylindrical surfaces on the upper part of the blocks. To employ this teaching on the Cope et al device and use cylindrical article-holding blocks is not deemed inventive. To have the cylindrical surfaces of adjacent blocks in contact with each other is considered merely a matter of design or mechanical skill and not invention."

This type of rejection continues to cause confusion but to the extent it indicates a statutory ground of rejection, it is a rejection for obviousness under 35 U.S.C. § 103. To the extent this is a proper interpretation of the examiner's position, it seems to be entirely consistent with appellants' own statement in the specification:

"A feature of the present invention is that the loading units can also be used with any other type of receptacle positioning device. Chain link conveyors, indexing rotors and even manual positioning can be substituted for the disc-and-track assembly of Fig. 3. The disc-and-

other only along a very limited section of their peripheries."

track assembly can have rectangular or square discs rather than the circular ones shown in Fig. 3, although the circular discs provide a more open work space through which stray particles can more readily fall, and also provide minimum contact between holders (at the point where the discs engage) so that there is less likelihood of wedging explosive particles and detonating them."

It seems to me that the presently asserted advantage in connection with the open work space between circular discs is very ephemeral if, as taught by appellants in the above-quoted portion of their specification, "rectangular or square discs" can be used rather than circular ones. Thus, if we interpret the term "cylindrical article-holding blocks" of appealed claim 26 in the light of the specification, it may well include both the rectangular and square discs which appellants contemplate using as equivalent structures. The precise term appellants use in the disclosure to describe their discs is "circular." To claim them as "cylindrical," as in claim 26, particularly in view of the suggested breath of this term to embrace forms other than circular, suggests that a claim so worded, when interpreted to include the rectangular or square discs which appellants have disclosed as their mechanical equivalents in the conveyor, reads upon the Cope et al. conveyor structure.

Also, I am not impressed, as the majority seems to be, with the argument that the "cylindrical" form of disc is important to the safety aspects of the operation. My thinking in this respect admittedly is influenced by appellants' statement in their specification that:

"When the apparatus of the present invention is used for loading explosives, it is desirable to provide suction ducts opening at any location on the machine where some of the explosive material is apt to be spilled. The place at which brushing of excess fillant from the top of the receptacle takes place is such a location and the unloading site is usually another such location. The suction ducts can be connected through water traps to a suction blower so that explosive particles are trapped by the water and thereby rendered innocuous."

I would, therefore, affirm the rejection of claim 26.